DBA COMMUNICATION SYSTEMS INC., PLAINTIFF *v.* UNITED STATES, DEFENDANT, AND AMERICAN TELEPHONE AND TELEGRAPH CO., DEFENDANT-INTEVENOR

Court No. 90–08–00385

(Dated August 27, 1991)

*Bell, Boyd & Lloyd (Patrick J. Roach)* for plaintiff.
*Stuart M. Gerson,* Assistant Attorney General, *David M. Cohen,* Director, Commercial Litigation Branch, United States Department of Justice, Civil Division *(Lloyd M. Green); Tina M. Stikas* and *Mary O'Donnell,* Office of the Chief Counsel for Import Administration, United States Department of Commerce, of counsel, for defendants.
*Covington & Burling (Harvey M. Applebaum* and *O. Thomas Johnson, Jr.), Terry L. Trantina,* of counsel, for defendant-intervenor.

## OPINION

RESTANI, *Judge:* Plaintiff, a Canadian company manufacturing telephone systems in Korea and importing such systems into the United

---

States, challenges the determination by the Department of Commerce ("Commerce" or "Department") that plaintiff's SmarTalk Model 208 and Model 308 telephone sets, and the power supplies, parts and accessories used with these sets fall within the scope of the antidumping duty order in *Certain Small Business Telephone Systems and Subassemblies Thereof from Korea,* 55 Fed. Reg. 4215 (Feb. 7, 1990). The court will review Commerce's scope ruling in order to determine whether it is supported by substantial evidence on the record and is otherwise in accordance with law. 19 U.S.C. § 1516a(b)(1)(B) (1988).

### BACKGROUND

On December 27, 1989, after completing an investigation of small business telephone systems from Korea, Commerce published a final affirmative less than fair value determination. *See Final Determination of Sales at Less Than Fair Value: Certain Small Business Telephone Systems and Subassemblies Thereof from Korea,* 54 Fed. Reg. 53141 (Dec. 27, 1989). In its final determination, Commerce defined the merchandise subject to investigation as

> [c]ertain small business telephone systems and subassemblies thereof * * * whether complete or incomplete, assembled or unassembled, with intercom or internal calling capability and total non-blocking port capacities of between two and 256 ports, and discrete subassemblies designed for use in such systems. A subassembly is "designed" for use in a small business telephone system if it functions to its full capability only when operated as part of a small business telephone system.

*Id.* at 53142. Noting that it had received numerous inquiries regarding the inclusion of "dual use" subassemblies, Commerce stated that it would define dual use subassemblies as "those subassemblies that function to their full capability when operated as part of a large business telephone system as well as a small business telephone system." *Id.* Any true dual use subassembly would be excluded from the scope of the investigation.

On January 30, 1990, plaintiff requested Commerce to rule that its SmarTalk 208 and SmarTalk 308 model telephone sets, and power supplies, parts and accessories for use with such telephone sets, were dual use subassemblies, and therefore, outside the scope of the antidumping investigation. Plaintiff stated that the SmarTalk 208 and 308 are two and three-line telephones[1] that can be interconnected in configurations of up to eight telephone sets with a common power supply to form a telephone system. Plaintiff explained that "the system of interconnected SmarTalk telephones can be connected with large PBX systems or with

---

[1] A unique feature of the SmarTalk telephone sets is that the circuitry is contained within the set itself, thereby making a separate key system unit unnecessary. A "key system unit" is defined as a mechanism which allows a limited number of telephone sets to be connected to a limited number of external lines. Administrative Record Document ("A.R. Doc.") 4 at A–7 (Final Determination of the International Trade Commission in *Certain Telephone Systems and Subassemblies Thereof From Japan and Taiwan*). In other words, the key system unit is the actual switching device which routes the incoming or outgoing calls to a particular telephone line.

central office Centrex service so that the SmarTalk system operates "behind" these services and functions as part of the large business telephone system."[2] A.R. Doc. 8 at 2. It is only when used in such "large business" applications that certain features and capabilities of the telephone sets are fully utilized.[3] Therefore, plaintiff contended, these telephones fall within the dual use exception to the antidumping order.

On February 7, 1990, Commerce entered its antidumping duty order in the investigation. *Antidumping Duty Order and Amendment to the Final Determination of Sales at Less Than Fair Value: Certain Small Business Telephone Systems and Subassemblies Thereof From Korea,* 55 Fed. Reg. 4215 (Feb. 7, 1990). The antidumping duty order reiterated the product definition and dual use subassembly exception contained in the final determination.

On February 28, 1990, defendant-intervenor AT&T submitted comments to Commerce opposing plaintiff's exclusion request. A.R. Doc. 10. AT&T noted that the SmarTalk 208 and 308 sets are usable in a large business telephone system only when they are used in connection with other SmarTalk sets. AT&T also stated that because Commerce excepted from the order only dual use *subassemblies*, these "SmarTalk *systems*" were not, by the order's own terms, subject to the dual use exception. *Id.* at 2. AT&T argued further that "[e]ven if it were possible to use a subassembly of a SmarTalk system directly in a large PBX, it is very unlikely that it would provide full functionality in such a configuration."[4] *Id.* at 3. Plaintiff filed a rebuttal letter with Commerce on March 16, 1990. A.R. Doc. 11. Plaintiff argued that by the order's terms the SmarTalk 208 and 308 telephone sets were outside the scope of the order because the capabilities of these phones are "fully realized *only* when they are linked together behind Centrex or a PBX in a large system configuration." *Id.* at 2. Plaintiff contended that the subassembly (the Smartalk phone) was not fully functional as part of a small business telephone system; rather, it only reached its potential when linked together in a large business configuration.

Commerce issued its scope determination on July 5, 1990. A.R. Doc. 13. After reviewing the definition of "dual use subassemblies" in the earlier determinations, Commerce noted that it had specifically defined "subassemblies" to include "(1) Telephone sets and consoles, consisting

---

[2] A PBX (private branch exchange) is "a small central office, located on the customer's premises, that serves the customer with in-house telephone service and also connects telephone sets and other stations to the public switched network via the telco's central office." A.R. Doc. 4 at A–9. Centrex is "a generic name given to a subscriber switching service that a telco [telephone company] can provide by dedicating telephone lines and a share of the central office switching equipment to an individual (business) customer." *Id.* at A–13.

[3] Along with their letter to the Department, plaintiff submitted an affidavit of Mr. David J. Bensted. A.R. Doc. 8 at Exhibit A. In this affidavit, Mr. Bensted states that the additional features of the SmarTalk telephones which become fully functional in the large business system application include the following: programmable timed hook flash, non-square operation, PBX operating mode on memory dial and redial, ringer cadence on incoming lines, and hook flash and pause programmability in memory dial. *Id.* at 4.

[4] AT&T explained that Centrex is not an actual telephone system. It is a service provided by regional telephone companies; therefore, compatibility with Centrex does not create a dual use issue. A.R. Doc. 10 at 2 n.1. For the purposes of this appeal, the court does not reach the issue of whether or not Centrex is an actual telephone system. It is sufficient that a large PBX is a large business telephone system.

of proprietary, corded telephone sets or consoles * * *, (2) Control and switching equipment, whether denominated as a key service unit, control unit, or cabinet/switch * * *, (3) Circuit cards and modules, including power supplies * * *." *Id.* at 4 (citing the preliminary determination reported at 54 Fed. Reg. at 31979); *see also* 55 Fed. Reg. at 4216 (antidumping duty order). Commerce stated that it did not consider subassemblies linked together to constitute a "subassembly," and therefore, found it "significant" "that the subassemblies of the SmarTalk systems must be linked together as a system in order to be fully functional behind a large business telephone system * * *" A.R. Doc. 13 at 5. In rejecting plaintiff's request for exclusion, Commerce noted that "[a]lthough the Department excluded dual use *subassemblies* from the scope of the order, it did not extend the language of the scope to exclude dual use *systems*." *Id.*

Plaintiff now argues before this court that the scope determination was not supported by substantial evidence on the record and urges this court to grant its motion for judgment on the agency record.

## Discussion

For the reasons contained herein, the court finds substantial evidence of record supports Commerce's conclusion that plaintiff's SmarTalk 208 and 308 sets did not function as dual use subassemblies, and therefore, are not excluded from the antidumping duty order.

I. *As used in large business applications, the SmarTalk 208 and 308 telephones sets do not function as subassemblies:*

It is undisputed that if the SmarTalk 208 and 308 telephone sets function to their full capability only when operated as part of a large business telephone system, they are excluded from the antidumping duty order. Plaintiff would like this court simply to note that additional features are available when the subject telephone sets are configured so as to operate "behind" a PBX or Centrex service, and therefore, conclude that the order's express language has been met. The problem with plaintiff's approach is that it focuses on a semantic distinction which has no basis in the facts of operation of these telephone sets.

In order to fall into the dual use exception, the subject item must be a subassembly. By definition, it is clear that a single telephone set constitutes a subassembly, as does a power supply unit. The way in which the additional features noted by plaintiff become available is only through the interrelation of *several* SmarTalk telephone sets. From the beginning, plaintiff has admitted that the SmarTalk 208 and 308 telephone sets must be configured with between two and eight other SmarTalk telephones in order to reach full functionality. *See* A.R. Doc. 8 at 2. Although each individual telephone set will, if connected with the other sets, obtain several additional features, it does so only because of its connection to other sets. The necessary nature of this interaction makes it clear that it is not a single subassembly which is at issue here; rather, the

additional features are available only by virtue of the configuration of several of these sets.[5]

Plaintiff contends that Commerce extended the scope of its order by imposing a requirement that the exception does not apply to subassemblies that must be linked together in order to be fully functional as part of a large system. The court finds, however, that it was reasonable for Commerce to base its conclusion on the admitted fact that the individual subassembly (the SmarTalk telephone set) functioned to its full capability only as part of a SmarTalk configuration. Accordingly, the court finds substantial evidence supports Commerce's conclusion that subassemblies which must be linked together as a system in order to be fully functional as part of a large system do not constitute dual use subassemblies. Because the individual SmarTalk telephone set obtains full functionality only when used in a configuration with other SmarTalk sets, the court must address the question of whether the entire SmarTalk configuration might fall within the dual use exception.

II. *The language of the antidumping order indicates that only dual use subassemblies are excluded, not dual use systems:*

In reaching its ultimate conclusion, Commerce stated that the language of the order excluded dual use *subassemblies* and not dual use *systems.* This is consistent with the language of both the final determination and the order. *See* A.R. Doc. 5 at 53142; A.R. Doc. 7 at 4216 (Commerce notes exception for dual use "subassemblies"). As discussed above, the court finds that the SmarTalk 208 and 308 telephone sets, when linked together to operate in a large business telephone system, are not functioning as individual subassemblies. Although plaintiff avoids labeling this configuration a "system," the court finds that it is properly described as such. Commerce used the word "system" to describe the linked subassemblies because it found that the individual telephone sets had to be wired to each other before they could be hooked up to the large business telephone system. Moreover, in plaintiff's submission of January 30, 1990, plaintiff refers to the operation of the telephones "behind" the large business telephone systems. A.R. Doc. 8 at 2. Given this information, the court finds substantial evidence that the SmarTalk 208 and 308 do not operate as individual subassemblies in large business application and are more properly described as operating as a "system." Thus, the SmarTalk 208 and 308 are outside the express exclusionary language of the antidumping order.

---

[5] Plaintiff argues that the SmarTalk telephones "achieve full functionality in the large context precisely because *each* SmarTalk telephone is wired *directly* to the large business telephone system and programmed to operate as part of the large business system." Plaintiff's Reply Brief at 3. It is determinative, however, that the telephone sets also must be wired to each other in order to function within the large business system.

## CONCLUSION

Commerce did not add a requirement to the dual use exclusion provision of the antidumping order in finding that the exception did not apply to "telephone sets and other subassemblies that must be linked together to in order to be fully functional as part of a large system." A.R. Doc. 12 at 6. Rather, Commerce recognized that the operation of the SmarTalk telephone sets in large business applications required that the telephone sets first be configured to act as a SmarTalk system. The necessity of this step made the dual use exception unavailable to plaintiff. Accordingly, the court denies plaintiff's motion for judgment on the agency record.